The complaint alleges that by virtue of said act the plaintiff was appointed to his said office by the Governor on 22d February, 1897, for a term of four years from that day, but that he has been illegally ousted from his office by defendants, who claim to hold the office of Shell Fish Commissioners, under act of 1899, ch. 19.
The answers allege that by virtue of said act of 1899, ch. 19, and proceedings held in compliance therewith, they are rightfully in possession of their office of Shell Fish Commissioners, and that the office claimed by the plaintiff was abolished by the legislation of 1899.
(195) His Honor, upon the hearing, rendered judgment in favor of plaintiff. Defendants appealed.
FAIRCLOTH, C. J., writes the opinion of the Court.
CLARK, J., writes dissenting opinion.
The plaintiff was duly appointed by the Governor "Chief Inspector" in February, 1897, for a term of four years, under *Page 137 
an act 1897, ch. 13, sec. 12, to provide for and promote the oyster industry of North Carolina. The defendants claim that plaintiff's office was abolished by the act of 1899, ch. 18, sec. 3, and that he is entitled to the office as a Shell Fish Commissioner under and by virtue of the act of 1899, ch. 19, passed at the same session of the Legislature.
The above statement presents the question so frequently presented to this Court in recent years, that is, whether the act relied upon by the new claimant is amendatory of a previous act, under which the other claimant (the plaintiff in this case) asserts title, or whether it is an absolute repeal and the substitution of a new system or scheme for the government and regulation of the same subject matter. As the argument and reasons have been so often stated by this Court, we deem it quite unnecessary to repeat them. We may say, however, that it is well settled that an office is property; that the Legislature may abolish an office of its own creation; that it may, when not in conflict with the organic law, increase or diminish the duties of an officer; but it can not, as long as the office remains, deprive the officer of the material part of his duties and emoluments, and that the oath and salary are the incidents of an office, but no part of its duties. (196) Many of the decided cases for the above propositions and the general doctrine, are cited in Abbott v. Beddingfield, at this term, as well as in McCall v. Webb, at this term.
Are the provisions of the act of 1899, ch. 19, establishing the Shell Fish Commission the same in substance as those in the act of 1897, ch. 13, promoting the oyster industry in North Carolina? A careful reading shows that they are. The name, the methods and details are different, but the same general object is found in both acts. The act of 1899, ch. 18, expressly provides for the amendment of certain sections of the act of 1897, and by section 3 repeals section 12, under which the plaintiff was appointed, and the same act, ch. 19, provides for the general supervision of the shell fish industry in North Carolina, and then prescribes in detail how the Commission shall perform the duties assigned to it. The reading of a few sections of each act will show the truth of the matter:
 1897. Sec. 12 compared with sec. 2. 1899. 1897. Sec. 12 compared with sec. 4. 1899. 1897. Sec. 12 compared with sec. 5. 1899. 1897. Sec. 12 compared with sec. 8. 1899.
These refer to material matters and will do for illustration. *Page 138 
In the argument it was said that the act of 1897, ch. 13, had for its object "catching and inspecting oysters," whereas, the act of 1899, ch. 19, had in view the "general supervision of shell fish," and that, therefore, the subject matter of the two acts was not substantially the same. There was no attempt by counsel to mark the distinction, and we have no disposition to undertake the task, but will let our opinion rest upon the ground already stated.
(197) We have thought it not improper to look back and see if the Legislature has had in mind any distinction in that respect. The Code, vol. 2, p. 424, contains all the legislation prior to 1883, under the general head of "oysters and other fish." The act of 1885, ch. 84, forbids the Superior Court clerks of Onslow and Pender counties to license any person to stake off oyster gardens in certain limits within those counties. The act of 1887, ch. 90, sec. 1, authorizes the justices of the peace of Onslow County to appoint three citizens interested in the oyster industry as a "Board of Shell Fish Commissioners," with jurisdiction over "all the grounds and shell fisheries relating to the oyster culture" in their county. Sec. 8: The county treasurer "shall keep the shell fish funds separate . . . . . and pay out of the oyster fund all verified orders drawn on him by the Board of Shell Fish Commissioners," and pay over any balance of the oyster fund, and he and his bond are made liable for all moneys coming to him "from such shell fisheries." The act of 1889, ch. 298, to promote the "cultivation of shell fish in Onslow County" provides for the Board of Shell Fish Commissioners to be paid from "taxes laid upon oyster grounds," and other accounts to be paid upon the order of the said board. It further provides how any person "may raise or cultivate oysters or other shell fish on any ground in the county. The act of 1891, ch. 419, provides that all applications for oyster grounds must be made to the "Board of Shell Fish Commissioners," etc. The act of 1891, ch. 200, entitled "An act to perpetuate the landmarks of oyster grounds in Onslow County and to facilitate the catching of migratory fish," puts the oyster lands under the control of the Shell Fish Commission. Webster's International Dictionary definies [defines] shell fish thus: "Any aquatic animal whose external covering consists of a shell, either testaceous, as in oysters, (198) clams and other mollusks or crustaceous as in lobsters or crabs." Worcester also describes shell fish as follows: "The term is chiefly applied, in commerce, to crabs, lobsters and croyfish, oysters, mussels, periwinkles and whelks."
Upon the above review, we are not prepared to say that the Legislature has declared or drawn any distinction between oysters, shell fish and "migratory fish." *Page 139 
It was also urged that, in order to sustain the plaintiff's contention, this Court must overrule Ward v. Elizabeth City, 121 N.C. 1. That contention was discussed and decided adversely in Abbott v. Beddingfield, at this term, and the fallacy of the argument made apparent.
We are, therefore, of opinion that no error was committed in the Superior Court in trying this case.
Affirmed.